Thank you for trailing my case. I apologize. Christopher Stender present for the petitioner, Rafat Ermiz. I'd like to reserve two minutes of my time for rebuttal. I think the three issues that are of concern in this case for me as the counsel and also I think for the court is once again the definition of acquiescence. Also whether or not there was a government agent required as the actor of the torture and also country conditions. I think those are the three issues that I'm going to end up analyzing through my oral argument here before the court today. I'd like to take the court back to what the immigration judge found in his decision. The decision was made April 30, 2004. The immigration judge broke it down into four factors. He found that the petitioner had endured severe pain and suffering both because he was a Chaldean Christian and also for his failure to join the Ba'ath Party. He also found that he was part of a very small minority and that he could not relocate within the country of Iraq because the community already small was decimated throughout the war and had only decreased in numbers. The immigration judge also found that based on the 2003 Iraq country condition report it affirmed that there was gross flagrant or mass human rights violations in Iraq. But the fourth factor is where the judge went out in Iraq at what time. Well that's part of the problem regarding this case. I understand that but it's also part of the finding by the IJ. So I don't I don't think we can disregard his existence. Well the report that the judge used was the report from 2003 I believe. There was a later report that was put in trying to update the country conditions because of course they were very fluid. Just to give kind of a context the record supports that there was a hearing held right after right right after the capture of Saddam Hussein. It was said over and then within five months of his capture is when we went to hearing. But the judge at that time said that well you know there's a provisional government. They're trying to combat the insurgents and I'm going to find that that that's sufficient that they're trying to suppress it. That goes to an issue that I highlighted originally is who is who was the government of Iraq at that time. Who was in control and what was the duties or responsibilities of that government to protect Mr. Ramis from torture if he's returned to Iraq. On the fourth factor the immigration judge found that there was no acquiescence of an Iraqi government official. He found that the provisional government was not responsible for any torture or harm being in being inflicted by these Iraqi groups. Counsel I thought a lot about this case. This is a very troubling case but I kind of get back to the problem that I think my colleague was alluding to. And that is we all have the benefit of hindsight at this point as to what's happened in Iraq. And we know that through newspapers and blogs and the media generally. But this is a legal proceeding and we're dealing with what an immigration judge found some time ago based upon the facts that then existed. And that's of course all we can do. If you have an ongoing standard you never can put anything to bed because it just keeps going and going and going. Aren't we pretty much restricted in our analysis to what the facts were as viewed by the IJ in accordance with the regulations that existed at that time. However incorrect they turn out to be in hindsight. A number of responses to that. Initially of course you could potentially remand it. On what basis though? Well the fact that country conditions have changed so much because of the passage of time. Again I'm just trying to wrestle with this problem. We're a court of appeal here. We're a number of years down the road. I gather what you're saying is we need to remand it because we as individuals based upon our own independent observations of what's happened since that time are aware that there are some problems and so we say we're going to send this back because we know things have changed. But the system can't work that way can it? No Your Honor and it doesn't need to get to that because the petitioner showed that he would be tortured based on those country conditions, based on the record that's before the court today. The record evidence does support that he would be tortured. But with the acquiescence of a governmental official or the government? Well what it gets broken down to and I was going to, the language of the immigration judge that he used is he said the applicant must establish that current government officials acting in an official capacity would be quote responsible for torture. Responsibility has been defined as a duty to act. And the Zhang decision says an inability to oppose it is sufficient. So you're saying if the government is impotent that's enough? Well that's what this court's case law says. An inability to control the conditions to having the duty to act, the responsibility, and being incapable of preventing it is sufficient. And the duty, what you're saying is that there is a duty to act on the part of a provisional government. I think at that point it hadn't even been elected. A United States appointed provisional government, or indeed it might have even been the United States government through its military at that point. You're saying that the fact that the United States military was not able to prevent insurgents from killing, torturing, maiming people like your client is enough to warrant a different result here. Is that what you're saying? Yes, Your Honor. And this court's case law supports it. The Zhang decision says exactly that. What if the government is doing, and I'm just speaking hypothetical here because I think history will tell us whether they did, but what if the United States government was doing all it could through its military and then provisional authorities to prevent this very kind of thing? Does that bear on our analysis? I think that's where the immigration judge went with it. But the case law, I think, quite clearly says exactly that. Then an inability, if the responsible authority is incapable, unable to do it, then that is sufficient. I'll paraphrase here, and it's been cited in other cases, that it is enough that public officials could have inferred the alleged torture was taking place, remained willfully blind to it, or simply stood by because of their inability or unwillingness to oppose it. So an inability has been cited by this court in other decisions in support of the fact that if the government authority cannot protect these people, that is sufficient for finding any grant under the Convention Against Torture. But I also wanted to direct... What's happening is a criminal activity out there, and you've got gangs, thugs, etc., etc., who are running around, and every... Are you saying that in any country where the government doesn't stop all crime, that a person who had been victimized previously in a criminal enterprise has the right to be in the United States under cap? Well, we don't have to go that far because the judge here found torture. He found in his decision there was torture. He met the legal definition. That really wasn't an issue. Let's say we had criminals who were tortured, like the drug cartels in Mexico. It's real clear from the news that that's what's happening. Are you saying that because someone may have been tortured by a... because they didn't cooperate with a drug gang there, the fact that the government of Mexico is not capturing these people and stopping them from torturing them allows someone to claim the benefit of cat and remain in the United States because if they go back, the drug people will torture them? Well, I think you've... The court is framing the issue, Judge Smith, you're framing it a lot broader, and I think... I'm just trying to understand it. I'm trying to understand the ramifications of this. And I would say... I would hide behind the fact that I have specific findings in this case by the immigration judge legally that there was torture, that he suffered it, that there were gross, mass, flagrant human rights violations. He found all those factors. But he said, well, the government... It's sufficient the government is attempting to stop it. They don't need to actually stop it. But if they're attempting to stop it, that's good enough. And the case law of this court says that's not enough. That's not sufficient. My problem with your case is the following. It's very clear that we have in the record that he was tortured by the Saddam Hussein regime. No difficulty with that one. But, of course, that regime is gone. And there's some evidence that he's put into the record that he legitimately fears being tortured upon his return to Iraq, if that's what happens to him. And he'll be tortured, he says, because he is a Chaldean Christian. Right. Now, how much is there in the record that he is in any different situation than any other Chaldean Christian in Iraq? Well, what I would look... Well, he did testify that he spent, I think at the time, 32 years in the United States and he was very Americanized, that he spoke English better than Arabic. So there were specific factors beyond... Well, he never spoke Arabic very well. He always spoke the language of the Chaldeans. I mean, that's his native language. His native language, correct. And by being out of the country and being so closely associated with what is looked down by many Iraqis as an occupying force and him living in that country for 32 years, I think that does distinguish him quite a bit from people who've remained in the country the entire time. I wanted to, in my last few seconds I have left, apparently I'm over, I just wanted to point out, though, that the BIA's decision, AIRS, its March 2, 2005 decision, changes the immigration judge's analysis quite a bit because they say that the threat of danger is not the result of anyone in governmental authority. And, of course, Asanoor said that, well, if the torture is carried out through private parties, that can be sufficient. I see the BIA kind of is jumping and saying, well, the torture needs to be taken, has to be carried out by the government or somebody acting, I guess, through the government. And also that the second error that they made that the immigration judge really doesn't say that is the conditions are equally dangerous for all persons living in Iraq and do not effectively respond differently than the populace generally. The record doesn't support that either. That's not his case. His case is that I am different from most of the people in Iraq. Absolutely. Let's hear from the government and then we'll give you the answers. But yet the BIA makes those findings. Thank you. Good morning. May it please the Court. My name is Jan Redfern. I'm appearing on behalf of the Respondent and the Attorney General today. Your Honor, as the Petitioner, as the Court is aware, is a native and citizen of Iraq. He was ordered removed as an alien, convicted of a controlled substance offense, which under the INA is also an aggravated felony. He was sentenced to serve five to 20 years in prison, and he actually served five years and 18 days of that sentence. Because of his conviction, Petitioner Heer was only eligible, it's a very unique circumstance here, because he was only eligible for deferral of removal under the Convention Against Torture. And in that respect, he bore the burden throughout his hearing to demonstrate that he would be tortured in Iraq by or at, with the acquiescence of the government of the time. Now, the Petitioner here claimed at his removal hearing that he and all Christians in Iraq, not just him, but all Christians in Iraq, would be tortured not by the government, but by private citizens, and specifically he stated Muslims, Islamics, and Al-Qaeda members. And the IJ denied deferral here because the Petitioner failed to demonstrate, the one thing that he was required to demonstrate that he failed to demonstrate, was that more likely than not, he would be tortured by the government or with the acquiescence of the Iraqi government. And the evidence here consisted of the most recent, that was the 2003 Department of State Country Conditions Report, the 2003 profile in Iraq, and various news articles regarding the capture of Saddam Hussein and the general conditions in Iraq, both before and after the fall of Saddam Hussein. There was no evidence in the record that the provisional government that existed at the time of the Petitioner's hearing would torture the Petitioner or would acquiesce in his torture. In fact, Petitioner testified that he had brothers who were also Christians, his whole family were Christians, who remained living in his hometown in Missoula. And he stated that they had no problems, and in fact the U.S. troops came to their home from time to time to protect them from any insurgence or any violence that was occurring. Have any members of his family been killed? That's not in the record, Your Honor, and Petitioner has not filed anything for instance. I thought I read that there was someone, and I confess that I'm a little fuzzy on the facts, but I thought I read as I was preparing this case that an uncle was killed, but I may be wrong on that. I believe that he did state someone was killed. I don't know that there are any more specific references to how the person was killed. But if he said that, that's in the record. And again, I'm fuzzy as well, Your Honor, as far as. Maybe we can get help from the other side on that. But he didn't state, he didn't file anything with the board, stating a motion to reopen or anything for instance, stating that his uncle was killed. Well, my recollection is that he said that during the, he didn't have to reopen. I mean, there it was. It was in the, whatever was said was said during his. Assuming that it's true that someone was killed, he didn't state that the person was killed by the Muslims or the people he feared or that it was done at the acquiescence of the government. In other words, that the government could have prevented, failed to prevent, failed to take any action in the killing of his family member. But the test is not whether the government could have prevented. The test, I think, is the government is either unwilling or unable to control. I believe the unwilling and unable, Your Honor, is actually for persecution. I see. So acquiescence is the test for cat. Acquiescence is, Your Honor, yes. And that is, as the court held in saying that the government has to have some awareness, which includes actual knowledge and willful blindness of government officials. And there's no evidence in the record that the government would acquiesce in the torture or killing. And it's undisputed that there are violent conditions in Iraq, as there are all around the world. There's gang members in El Salvador and Guatemala. But in the absence of a showing that the government would acquiesce in his torture, the petitioner failed to satisfy his burden for receiving deferral under the Convention Against Torture. Did he put on any evidence at all that would show that the government was knowledgeable about the torture of Chaldean Christians at the time of the latest country report, I guess, 2003? I believe, Your Honor, as I said, that the evidence consisted mainly of the Department of State country conditions report, which do, in fact, have evidence that there are numerous persons being killed or tortured, including Chaldean Christians, discriminated against specifically. But, again, this is not a discrimination case. This is not an asylum or withholding case. Just the general conditions of violence were not sufficient. If there are no further questions, the government would ask that the Court would deny the petition for review. Thank you. Would you like a minute to respond? Yes, Your Honor. There was testimony on page 89 of the record. A brother was killed. Right. And I think that's what the Court's referring to. I think I heard the oil attorney say I think a somewhat incorrect legal standard regarding acquiescence. It's awareness and not actual knowledge or willful acceptance, and I think that that's somewhat important. Also in their brief, in page 89, factually, and I heard it argued today, I think it really misreads the record about his brother's return to his home village. If you read it on page 89 of the AR, he says they moved back to the village where there's no Muslims and no problems and they don't leave the house that much, and every now and then the U.S. troops, they come over there just to protect them from, all right, well, Muslim groups come over there. It's not like they moved back and this is some peaceful area. They're moving back to escape the persecution that they're experiencing, and they're staying inside their house and the U.S. troops to some degree are protecting them. He does say that, but that certainly is not what's been quoted in the government brief and argued that there are no problems for Christians. There are articles. I'm now back into the record and I'm remembering this. His brother was killed, but his brother was in the Army. Yes, that's true. He says a few pages earlier that seven people just got killed in the last year, all Christians, one of whom was his cousin. That is also true. But the brother, according to his testimony, doesn't sound as though he was killed because he was a Christian. He was in the Army. Yeah, there's no speculation. It was the cousin that I was thinking of. Okay, that is correct also. I thought that is correct. There are other articles also regarding different newspaper articles regarding church bombings and other persecutions specifically targeted at Christians that go outside the country condition report. That's already part of the record and was cited, too, in this case. I don't know if there's any other questions. Thank you very much, both sides. Hermes v. Holder now submitted for decision. We've got one last case on the argument calendar. Are both counsel here for Flores v. Holder?
judges: Fletcher W. , Clifton, Smith M.